[No. 17763. Department Two. June 16, 1923.]

R. J. RIDGEWAY, *Respondent*, v. BERT R. LEWIS *et al.*,
*Appellants*.[1]

MUNICIPAL CORPORATIONS (383, 391)—USE OF STREETS—AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. The contributory negligence of a pedestrian struck by an automobile while crossing a street, is for the jury, where he had a right to assume that he could cross the pavement a distance of twenty feet before the arrival of an automobile, observed by him approaching three hundred feet away.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered September 27, 1922, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a pedestrian struck by an automobile. Affirmed.

*Preston, Thorgrimson & Turner*, for appellants.

*H. W. Lueders*, for respondent.

PARKER, J.—The plaintiff, Ridgeway, commenced this action in the superior court for Pierce county, seek-

[1]Reported in 216 Pac. 355.

ing recovery of damages which he claims to have suf-
fered as the result of the negligence of the defendant
Lewis in the driving of an automobile for himself and
his codefendants. The trial of the case before the
court and a jury resulted in verdict and judgment
awarding Ridgeway recovery from the defendants in
the sum of $732.50, from which they have appealed to
this court. They seek reversal of the judgment upon
the sole ground that Ridgeway's contributory negli-
gence was the proximate cause of his injuries, and for
that reason the trial court should have taken the case
from the jury and so decided as a matter of law, as
asked for by their counsel by appropriate and timely
motions.

Ridgeway, while walking southerly across the paved
roadway of Edison avenue, about 120 feet west of the
intersection thereof with the roadway of south M
street, in Tacoma, was struck by the automobile being
driven easterly by Lewis. The avenue runs approxi-
mately east and west, while M street runs approxi-
mately north and south. There is no sidewalk on either
of them at or to the west or south of the intersection,
other than a path used by pedestrians along the north
side of the avenue roadway extending for a distance of
several blocks to the west of the intersection. While the
roadway of the avenue is paved for vehicle travel, it is
not otherwise improved; it being improved substantial-
ly as country highways are generally improved by pav-
ing. M street to the north of the avenue and the ave-
nue to the west of M street constitute a portion of the
Pacific Highway, a much traveled thoroughfare by ve-
hicles between the central portion of the city and the
country to the southwest.

At the point where Ridgeway was crossing the paved
roadway of the avenue, the pavement is twenty feet

wide. There is no opportunity to walk along by the south side of the roadway because the ground rises abruptly immediately along that side of the roadway for a distance of several blocks west of M street, so that pedestrians proceeding along that portion of the avenue have to walk upon the pavement or on the path immediately to the north thereof. Pedestrians proceeding along this path towards the east with a view of going south up the hill along M street have been accustomed to cross the pavement at the place Ridgeway crossed when he was injured, at a point some 120 feet west of the intersection of the roadways, and proceed thence up the hill along a path in a southeasterly direction, coming to the roadway of M street some distance to the south of the intersection. Ridgeway's home adjoins the avenue several blocks to the west of M street. At the time in question, he walked from his home along the path on the north side of the roadway and was proceeding to cross over to the path leading up the hill to the south, with a view of going south on M street. At that time Lewis was driving the automobile east along the avenue pavement, approaching the point where Ridgeway was about to cross. Ridgeway's testimony as to what occurred then is in part as follows:

"When I saw the defendant's car it was about 300 ft. or such a matter. I judge it by the three telephone poles, when I started to cross. When I observed this I was right at the edge of the pavement ready to cross. It takes four or five or six seconds for me to cross. I was walking the ordinary gait going up the hill. I had crossed the Boulevard I should judge within six feet of the edge. I was past the center I know. There were only the two cars in sight. Defendant's car hit me mighty fast—seemed to be going mighty fast. When he blew his horn he struck me on the right shoulder. . . .

"I heard his horn and he hit me. It was blowing when he hit me. He just blew and down I went. I saw his car before I started to cross the street. Then I went across the street with the umbrella over my head. What wind there was was coming from the east. I would have the umbrella more against the rain than the other way. The umbrella was higher on the side towards Lewis. He was on my right hand approaching me. I knew he was coming. I was going right across. I could see his car coming and I thought he would go to the back. I couldn't see him all the time but I always kept watch both ways in crossing and I was keeping watch then. There was nothing to interfere with my seeing him except the umbrella. I could turn and look up. I could see him. I was going right across. It would be hard to tell how many times I saw him while I was walking across the street. I was at all times aware of his approach and saw him at my right side as I was crossing. He was right on me when he blew his horn. I didn't jump either way. I didn't have time. I saw him before I started to cross the road. I judge about 300 ft. or more and I started across expecting to get across. . . .

"Of course I realized that he was coming right on down but I didn't know he was coming so fast as he was. . . ."

It seems clear to us that this version given by Ridgeway as to what he then did in the way of looking and making himself aware of the approach of the automobile being driven by Lewis and his proceeding across the roadway leaves little room for arguing that he can be held, as a matter of law, of being guilty of con-· tributory negligence resulting in his injury. The jury's finding, of course, settles the question of Lewis' negligence, which, it seems, they must have viewed as consisting largely of his excessive rate of speed. If it be true, as the jury were warranted in believing, in the light of Ridgeway's testimony above noticed, that

Lewis was observed by Ridgeway to be some 300 feet away when he, Ridgeway, started to cross the roadway, it cannot be said, as a matter of law, that Ridgeway was guilty of negligence in proceding to cross the short distance of twenty feet and at the same time assume that he could do so with safety before the automobile driven by Lewis would reach his line of travel. It seems quite clear to us that it was for the jury, rather than the court, to decide as to whether or not Ridgeway acted as a reasonably prudent person would have done under the circumstances. It surely can be plausibly argued as a matter of fact that Ridgeway was fully warranted in assuming that his walking across the roadway for such a short distance would certainly be accomplished before Lewis would drive the distance of two or three hundred feet. This is not a case of Ridgeway failing to look and heed the approach of the car being driven by Lewis, since he manifestly was conscious at all times of its approach; but it is simply a case of whether or not Ridgeway was, as a matter of law, bound to assume that the car driven by Lewis would reach him before he had completely crossed the roadway. We think that it cannot be so decided as a matter of law, and that therefore the court properly left the question of Ridgeway's contributory negligence for determination by the jury.

The judgment is affirmed.

FULLERTON, TOLMAN, and PEMBERTON, JJ., concur.