[No. 21820. Department Two. August 19, 1929.]

N. O. HOYER, *Appellant*, v. SPOKANE UNITED RAILWAYS, *Respondent.*[1]

*Powell & Herman,* for appellant.

*Post & Russell,* for respondent.

[1]Reported in 279 Pac. 742.

PARKER, J.—The plaintiff, Hoyer, seeks recovery of damages for personal injuries alleged as suffered by him from the negligent operation of a street car of the defendant, Spokane United Railways. Trial upon the merits in the superior court for Spokane county, sitting with a jury, proceeded until the conclusion of the evidence introduced in behalf of the plaintiff, when counsel for the defendant, by appropriate motion, challenged the sufficiency of the evidence to sustain any recovery against the defendant, asked that the court so decide as a matter of law, and that judgment of dismissal be entered in favor of the defendant upon the ground of the plaintiff's contributory negligence. This motion was by the court sustained and judgment of dismissal accordingly rendered, from which the plaintiff has appealed to this court.

Sprague avenue, in Spokane, runs east and west, having a paved roadway thereon, between curbs, fifty feet wide. Respondent, United Railways, maintains a double-track street railway thereon. On the north track, the cars run west, on the south track, the cars run east. Ivory street runs north and south, coming up to Sprague avenue from the south, but it does not extend north of Sprague avenue. This is a street intersection to which the city ordinance traffic regulations apply the same as to other street intersections. Street cars stop for taking on and letting off passengers on the near side of all intersections, so that street cars going east on the south track stop just before reaching the projected line of the west sidewalk of Ivory street. Appellant had many times boarded the eastbound street cars at that point.

At about nine o'clock of the evening of the January day in question, appellant came onto Sprague avenue from the north, about thirty-four feet west of the pro-

jected line of the west sidewalk of Ivory street, with the intention of boarding the eastbound street car at the usual stopping place. As he came onto the north sidewalk of Sprague avenue, he saw a street car approaching from the west some two blocks away. Its headlight was brightly burning. Persons and objects were plainly visible at the Sprague avenue and Ivory street intersection. Appellant walked east thirty-four feet to the projected line of the west sidewalk of Ivory street; that is, to that pedestrian crossing of Sprague avenue, and there turned south and walked along the projected line of the west sidewalk of Ivory street, intending to cross the south track so as to board the street car on the south side, as passengers were required to there board eastbound street cars.

He says he did this at the time believing he had ample time to pass over the south track before the street car would arrive at its stopping place, and believing that the street car was slowing down and about to stop in response to his holding up his hand, as he was crossing Sprague avenue, as a signal for the car to stop; also that, as the headlight of the street car was brightly shining, and the car coming practically towards him, he was not able to estimate its speed.

Just as he passed over the south rail of the south track, or probably immediately after passing over the south rail, he was struck by the south front corner of the street car and was thereby severely injured, being thrown easterly and southerly several feet, lighting upon the pavement clear of the street car. Witnesses, other than appellant, said the car, as it approached the stopping place, was running very fast, some estimating the speed at from thirty to thirty-five miles per hour, and that its speed did not slacken until just about, or immediately prior to, appellant being struck.

The car ran about a distance of three times its length before it could be stopped. The ordinance limit of speed was twenty-five miles per hour.

Appellant testified, upon his direct examination, in part, as follows:

"Q. Where was the car at that time [meaning when appellant first came onto Sprague avenue thirty-four feet west of Ivory street]? A. The car was away back; it was fully two blocks back. Q. What did you do after that? A. Turned and walked east. There is a hydrant there at the edge of Ivory street. I started across to get the car. Q. Did you see the street car at that time? A. Yes. Q. Where was the car when you started into the street? A. It was back fully a block. Q. How far is that in feet? A. 350 feet. Q. And then did you continue to see the car as you went out into the street? A. Yes. Q. Just tell what happened. A. Well, I put up my right hand and walked out towards the car. I walked faster when I got out a little ways. I trotted along with my hand up. I wanted to stop the car. I wanted to go east. When I got near I ran a little ways. I wanted to be sure and get across because I thought the car was slowing down all the time. I was in front of the car and it was coming straight at me. Q. How far across had you gotten when you were struck? A. I was almost across. I got over the south rail."

Upon cross-examination appellant testified in part as follows:

"Q. And then you noticed how fast the car was coming? [Referring to appellant first seeing the car when he came onto Sprague avenue thirty-four feet west of Ivory street crossing.] A. I could not tell anything about it. Q. When did you first observe the speed of the car? A. I did not observe the speed of the car. Q. Did you try to make an estimate of what the speed was? A. No, sir. Q. When was it you last looked at the street car before you started across the street? A. I was looking at it when I was crossing the street. The car was coming nearly

straight towards me. I could not estimate the speed when the car was coming towards me. Q. How far did you travel up to the time the collision took place? A. From this curb over to the track is thirty-two feet, I think [evidently meaning the north rail of the south track]. Q. How fast were you going? A. I was walking fast, but I wanted to get across and I thought I had plenty of time. I thought the car was slowing down. Q. What did you speed up for if you thought you had plenty of time to get across? A. I suppose it is the natural thing to do. Q. You did not know how far away the street car was when you did start to speed up? A. I did not estimate the distance or did not give it any particular thought, but I thought the car was slowing down. I thought it was coming to a stop. Q. Part of the time when the street car was coming down there you were not right in front of it, were you? A. No, but the nearer I got to the track it kept me practically in front of it. Q. When did you put your hand up? A. When I got out from the curb a little. I started and stuck my hand up fully two-thirds of the way. Q. Did you actually see the car slackening its speed? A. No, sir; I say I thought the car was slackening its speed. Q. You did not look at the car sufficiently? A. I was looking at the car all the time.''

What appellant did from his coming onto Sprague avenue until the car struck him, was visible to another witness, whose testimony supports appellant's version of what he did during that period.

█ No contention is here made in behalf of respondent but that the operation of its street car, immediately preceding and at the time it struck appellant, was proved to be so negligently done that a jury might have found in favor of appellant on that question; more particularly as to the street car's excessive speed and the motorman's failure to observe appellant's crossing Sprague avenue and his signal for a stopping of the car at the usual stopping place at that.

intersection. The sole contention here made in behalf of respondent is that appellant was guilty of contributory negligence to the extent of preventing his recovery, and that this could be so decided as a matter of law.

It seems to us that the facts of the case, as the jury might have believed them, are such that the question of appellant's contributory negligence could not be decided as a matter of law against him. This case, like many others we have been heretofore called upon to decide, belongs, it seems to us, to that class wherein it becomes a question of fact for the jury to decide as to whether or not, under the circumstances, appellant was justified in assuming that he could safely cross the track without the car striking him. This is particularly true in view of the fact that this was a regular stopping place of the street cars eastward bound, upon proper signal being given therefor, and in any event was a place where the right of way of appellant was superior to the right of way of the street car, though we do not fail to recognize that such right of way is not absolute, but relative, as we have said in substance. If the car had not been running at an excessive speed, plainly appellant would have gotten across without being struck; and, if the car had stopped in response to appellant's signal, plainly he would have gotten across without being struck. This is not a case of appellant proceeding, wholly unwarranted, without taking any precautions. We think it cannot be said but that the exercise of his judgment under the circumstances was a question for the jury, and not for the court to decide. The following of our numerous decisions support this conclusion: *Brandt v. Northern Pac. R. Co.,* 105 Wash. 138, 177 Pac. 806, 181 Pac. 682; *Nabours v. Seattle,* 113 Wash. 557, 194 Pac. 800; *Goldsby v. Seattle,* 115 Wash. 566, 197 Pac. 787;

*Swanson v. Pacific Northwest Tr. Co.*, 121 Wash. 96, 208 Pac. 10; *Ridgeway v. Lewis*, 125 Wash. 316, 216 Pac. 355; *Demase v. Nemitz*, 144 Wash. 404, 258 Pac. 25; *Fisher v. Tacoma R. & Power Co.*, 148 Wash. 122, 268 Pac. 180; *Child v. Hill*, 149 Wash. 468, 271 Pac. 266. See, also, 20 R. C. L. 115.

The decision of this court which, to our minds, comes nearest to being out of harmony with the conclusion we here reach, is that of *McClelland v. Pacific Northwest Tr. Co.*, 138 Wash. 527, 244 Pac. 710. It appears in that case, however, that the interurban car was not supposed to stop at the place in question, and the injured plaintiff testified, "I did not think it was going to stop at Mercer street." This was where she crossed in front of the interurban car, knowing it was coming, and was injured. We conclude that the trial court erred in deciding as a matter of law that appellant was guilty of contributory negligence.

The judgment of dismissal is reversed, and the cause remanded to the superior court with directions to award appellant a new trial.

TOLMAN, MAIN, FRENCH, and MILLARD, JJ., concur.