FISHMAN *v.* EADS.

[No. 13,122.   Filed October 25, 1929.]

*James W. Fesler, Harvey J. Elam, Howard S. Young* and *Irving M. Fauvre,* for appellant.

*B. Howard Caughran,* for appellee.

NEAL, J.—The appellee, plaintiff below, by her complaint for damages, alleges, in substance, as follows: That on August 24, 1924, about 9 o'clock in the evening, she was lawfully and carefully walking across West Thirtieth street near East Riverside drive in that part of the city of Indianapolis which is included within Riverside drive; that the defendant (appellant herein) was the owner of a Ford automobile which he was then driving east along West Thirtieth street near east Riverside drive; that he (the appellant) "was at said time and place, driving said automobile in a careless, negligent and reckless manner, utterly unmindful of his duty to the pedestrians who were then lawfully on said street in this . . . that said defendant carelessly and negligently failed to watch the road ahead of his automobile or to heed the fact that there were in said street and in the immediate course of said automobile several persons crossing said street, including the plaintiff"; that "the defendant carelessly and negligently failed to slow down and notify said pedestrians of the sudden approach of his said automobile, either by sounding his horn or giving any other signal or warning, as is required by the laws of the State of Indiana, then in full force and effect"; that while the plaintiff, in company with other pedestrians, and in the exercise of due and proper care, was walking across West Thirtieth street, the defendant carelessly, negligently and recklessly drove his automobile with great force and violence upon and against the plaintiff; that she suffered severe injuries in that her right leg was broken above the

knee, and that she, in the attempt to cure herself, has been forced to pay, and has paid out and expended, large sums of money for medicine and medical supplies, etc. Appellant answered by a general denial. The case was submitted to a jury, which returned a verdict for the appellee in the sum of $900. Appellant's motion for a new trial was overruled, which ruling is assigned as error. The reasons or causes presented for our consideration are that the verdict is not sustained by sufficient evidence, and the verdict is contrary to law.

The evidence discloses that West Thirtieth street in the city of Indianapolis is paved to a width of 30 or 40 feet; that Riverside Park is an amusement place, visited by the citizens, not only of Indianapolis but elsewhere throughout the state, and West Thirtieth street, for a considerable distance, forms the south boundary line of the park; that, at the park, there is an amusement known as the "Old Mill," which is very near the curb line on the north side of West Thirtieth street that the Indianapolis Street Railway Company maintains a loop on its lines, which loop is directly opposite the "Old Mill," and at a place a few feet south of the curb line on the south side of West Thirtieth street; that, at the loop, passengers are discharged who intend to visit the park, and likewise passengers are taken away from the park; that people going and returning from the park pass over West Thirtieth street at a place in line with the "Old Mill" and the loop, although there is no street intersection at the particular point so used by pedestrians who desire to enter or leave the park; that West Thirtieth street, from a point in line with the loop and the "Old Mill," is in a "bend," and from said point it is a short square to the White River bridge.

On August 24, 1924, appellee, who was a resident of Osgood, Indiana, was visiting her son in Indianapolis. She was a married woman, 65 years of age. On the

afternoon of August 24, in company with her son and his family, she visited Riverside park. In the afternoon, a slight rain fell, but, at about 9 o'clock in the evening, the street was dry, and no rain was in evidence. At the time last mentioned, the appellee and other members of the party, which consisted of about 10 persons, gathered at the "Old Mill" for the purpose of returning home; the mother-in-law with the granddaughter and grandson of appellee proceeded to cross West Thirtieth street, and did so cross the street to the south side thereof, walking in practically a straight line from the "Old Mill"; they were followed very closely by the appellee, who, at the time had a "clear space across the street," and other members of the party immediately followed appellee. When appellee was within approximately six feet of the south curb line, an automobile, driven by appellant, an old Ford sedan with lights dimmed, "came around," and the right front fender of the Ford struck appellee, knocked her sideways, breaking her leg. The Ford car was moving at a speed of between 15 and 20 miles per hour. Appellant's car moved a distance of from 16 to 30 feet after striking appellee, taking into consideration the length of the car. Appellant did not check his car or give appellee a timely warning by sounding his horn or by signaling to her of his approach.

One witness said on cross-examination in answer to the following questions: "You say your mother-in-law, when she fell, 'sort of crumpled,' what do you mean by that?" A. "She fell, it knocked her clear of the car."

Q. "In what way?"

A. "Knocked her south."

Q. "Went straight south did she?"

A. "Not exactly, sort of sideway."

Another witness said on direct examination: "At that time I heard my cousin Vivian Branham . . . my grandmother, Mrs. Eads, had crossed the street and I was still

on the north side, and she was crossing and was pretty well across, and I noticed a car coming down Thirtieth street, and did not pay much attention, but heard my cousin Vivian Branham scream. The next thing I saw my grandmother on the street, and a Ford sedan slow down in front, that is, east of her. There were three or four persons crossing the street at that time." In answer to the question: "Where did the accident occur," the same witness said: "On Thirtieth street, at the bend, where it makes a bend, on the south side of Thirtieth street."

Several witnesses, who were on the south side of the street or in the act of crossing, gave evidence to the effect that they first saw appellant's automobile when within four feet of appellee, and one witness, who was on the north side of the street, said he saw the automobile about 20 feet away to the west. Appellee says she first observed appellant's car when within about two feet from her, and she moved to avoid it when the right fender struck her.

The appellant and his witnesses gave evidence that he, appellant, was driving an old Ford sedan, as above indicated. Seated in his car were eight other persons, consisting of his family and relatives. On the night in question, he was driving east on West Thirtieth street, intending to stop at Riverside park and hear the music. A Mrs. Ginsberg was riding in the front seat with appellant. She said: "I saw her [meaning appellee] and the people crossing, and she was almost across the street." One Muriel Fishman said: "The lady had started across the street, she seemed to slip, taking hold of the fender of our car as she fell by the side of the car."

The appellant said on cross-examination, "How fast was Mrs. Eads coming when she struck your car, as you say?" A. "Was not coming very fast; she was not sure of her feet." All of the witnesses for the appellant said

the Ford sedan was standing still; that they had stopped with the traffic and were looking for a place to park.

The evidence is to the effect that a person *standing near the "Old Mill"* looking west had a clear view to the bridge about 300 feet away. The evidence, however, does not disclose the degree of the curve at the point of the accident, or the distance appellee or others could have observed an automobile approaching from the west on Thirtieth street. The appellee said the automobile just "came around."

It has often been stated in opinions of the various courts that where there is a general verdict for the plaintiff, the court on appeal will sustain the verdict of the jury "if there was any competent evidence tending to establish any one of the several acts of negligence charged in the complaint," and such act of negligence is the proximate cause of the injury sustained by the appellee (*Davis, Agent,* v. *Welch* [1923], 80 Ind. App. 334, 140 N. E. 439); that, in an action for personal injuries, a general verdict in favor of the plaintiff is, in effect, a finding in his favor on the issues of negligence, as well as upon every other issuable fact necessary to sustain his cause of action (*Union Traction Co.* v. *Sullivan* [1905], 38 Ind. App. 513, 76 N. E. 116); that, in determining any material question in issue, the jury has the right to consider all of the evidence introduced at the trial which bears upon such question, whether introduced by the party having the burden of such issue or by his opponent (*Pearcy* v. *Floyd, etc., Lumber Co.* [1917], 186 Ind. 136, 115 N. E. 90); that the burden of proof on the question of contributory negligence is on the defendant, and whether or not a given state of facts shows contributory negligence, considering the evidence as a whole, is generally a question to be determined by the jury, "unless" such facts "are undisputed and such as to impel an inference of negligence in the minds of all

reasonable persons." (*Cincinnati, etc., R. Co.* v. *Mc-Gaughey* [1925], 85 Ind. App. 1, 147 N. E. 727.)

With the above principles of law in mind, we will proceed to examine appellant's propositions, viz.: There is absolutely no evidence from any one showing a single act of negligence on the part of the defendant; the uncontradicted evidence shows that appellee was guilty of contributory negligence.

Section 10476a Burns 1914, Acts 1913, ch. 300, §14, which was in force at the time of the accident in question, reads, in part, as follows: "In approaching a pedestrian who is upon the traveled part of any highway and not upon a sidewalk, and upon approaching an intersecting highwa, or curve or a corner in a highway where the operator's view is obstructed, every person operating a motor vehicle or motor bicycle shall slow down and give a timely signal with the bell, horn or other device for signaling," and §10476c Burns 1914, reads in part: "No person shall drive or operate a motor vehicle upon any public highway in the state at a speed greater than is reasonable or prudent, having regard to the traffic and use of the way or so as to endanger the life or limb or injure the property of any person."

In this case, the evidence is undisputed that appellant knew the traffic at and near Riverside park was heavy; that he did not slow down and give a timely signal with a bell, horn or other device; that he knew persons other than appellee were crossing West Thirtieth street between the "Old Mill" and the south side of the street. There is evidence, or legitimate inferences may be drawn from the evidence, that appellant saw, or, in the exercise of reasonable care, could have seen, appellee passing over Thirtieth street from the north to the south side thereof, a distance of between 30 and 40 feet, in time to have avoided striking appellee; that appellant, in the operation of his car,

caused the right fender thereof to strike appellee on the leg when she was within four to six feet of the curb; that the blow knocked appellee sideways, and that appellant's car stopped at a distance of 16 to 20 feet, taking into consideration the length of his car; that the speed of his automobile was between 15 and 20 miles per hour. Under such state of facts, it was for the jury to say whether or not appellant was guilty of negligence in the operation of his car, and, that such negligence was the proximate cause of appellee's injuries. See *Raymond* v. *Hill* (1914), 168 Cal. 473, 143 Pac. 743.

It is to be borne in mind that foot passengers have equal rights in the streets with automobiles, in the absence of statute or ordinance to the contrary, and neither has a priority of right over the other *Stringer* v. *Frost* (1889), 116 Ind. 477, 19 N. E. 331, 2 L. R. A. 614, 9 Am. St. 875. See *Meenach* v. *Crawford* (1916), 187 S. W. (Mo. Sup.) 879, and *Oliver* v. *Weaver* (1923), 72 Colo. 540, 212 Pac. 978; that, "regardless of the part of the street in which the pedestrian may be, if the driver sees, or in the exercise of reasonable care could see, the pedestrian in time to avoid a collision with him, and does not do so, he is liable for resulting injuries." Berry, Automobiles (6th ed.) 314. See *Anderson* v. *Wood* (1919), 264 Pa. 98, 107 Atl. 658; *Devecchio* v. *Ricketts* (1924), 66 Cal. App. 334, 226 Pac. 11. It has been said by the Supreme Court of California: "As to foot passengers, the old common-law freedom of use of the king's highway has not been modified in this state by any positive enactment." *Raymond* v. *Hill, supra.* The above statement is true as to the law in force at the time of this accident, and is recognized by the statute which requires one driving an automobile to slow down and give timely warning when approaching a pedestrian who is at the time using the "king's highway."

Appellant says that "traffic rules of public thorough-fares, whether based upon the law of the road, an ordinance, or statute, are not inflexible rules." *Borg* v. *Larson* (1916), 60 Ind. App. 514, 111 N. E. 201. He then proceeds to present an argument to the effect that, if the statute is to "be construed and applied as requiring every automobile to blow its horn when approaching every pedestrian on the road, the result would be bedlam." The above rule has only been applied in this state when an emergency has arisen, where it is necessary to escape from danger to one's self or to prevent injury to others. In such case, it will not only be excusable, but perfectly proper, to temporarily violate the general rule. In other words, appellant would have us declare, under the facts in this case, that his failure to slow down and give timely warning of his approach by sounding his horn is to be obviated, for the reason that a noise would come forth when his horn was called upon to do what it was designed and intended to do—that is, give a warning of his approach.

Can an appellate tribunal, in face of the general verdict for the appellee, say, under the facts in this case, that the appellee was guilty of contributory negilgence? Appellee was in the highway; she had the right to use the same as well as the automobile; she had left the north side of the street when she, at the time, had a clear space across the street, and proceeded in a straight line across the street to within four to six feet of the south curb line when she was struck by the right fender of appellant's automobile, which was traveling east; the evidence is silent as to whether she did or did not look for approaching automobiles when she first entered upon the street; she says that, the first time she saw the automobile, it was within two feet of her, and that it just "came around." Several witnesses on the south side

of the street saw the automobile for the first time when it was four to six feet from appellee, and one witness, who was on the north side of the street, saw the automobile when it was 25 feet from appellee. The accident happened at the bend in the street. True it is that appellee said there was nothing between her and the direction from which the automobile was coming, but her statement, in the light of her other evidence, was susceptible of several interpretations, none of which could mean that she had an unobstructed view west from the place of the accident for any appreciable distance.

We hold that it was for the jury to say, under all the facts in this case, whether the appellee was guilty of contributory negligence, and the jury, by its general verdict, having found that fact adversely to appellant, the result will not be disturbed on appeal. *Indianapolis, etc., Traction Co.* v. *Roach* (1922), 192 Ind. 384, 135 N. E. 334; *Louisville, etc., R. Co.* v. *Berry* (1893), 9 Ind. App. 63, 36 N. E. 646; *Huggon* v. *Whipple & Co.* (1913), 214 Mass. 64, 100 N. E. 1087; *Ridgeway* v. *Lewis* (1923), 125 Wash. 316, 216 Pac. 355; *Anderson* v. *Wood, supra; Little* v. *Yanagisawa* (1924), 70 Cal. App. 303, 233 Pac. 357.

Judgment affirmed.

NICHOLS, J., dissents with an opinion.

DISSENTING OPINION.

NICHOLS, J.—I am fully convinced that the evidence in this cause is not sufficient to sustain the verdict, and I must, therefore, dissent from the majority opinion. I am not unmindful of the rule that this court will not weigh the evidence, but this rule does not preclude the court from drawing reasonable conclusions from uncontradicted evidence, and, from such evidence, it clearly

appears that appellee was not injured by any act of negligence on the part of appellant, and that her injuries were the result of her own negligence. The facts hereinafter stated are undisputed, except as indicated.

Appellant was driving an old Ford sedan in an easterly direction approaching the place where the accident occurred. His lights were dimmed as required by statute, because another car was approaching from the east. Appellee's witnesses testified that he was driving at a moderate rate of speed, about 15 miles per hour. Moderate means temperate, mild, gentle, reasonable (*Webster*). That his speed was reasonable is evident by the fact that he stopped his car in such a short distance. Appellee testified that it moved four feet after it struck her, and after repeating this statement a number of times, she said that the car passed her four feet. At the most, then, the car was stopped within 16 feet. After seeing appellee, appellant applied the two-wheel brakes of an old Ford sedan, and stopped it within 16 feet. It was surely traveling at a reasonable rate of speed. Appellee was not knocked or thrown any distance. She just "dropped straight down" or "crumpled down," where struck. Appellant was facing the light of an approaching car, with lights dimmed, and he did not see appellee until just as she came in contact with the fender of his car. The evidence that appellant's car was moving was by appellee's witnesses. All of appellant's witnesses, being the people in his car, testified that his car was not moving. But, for the purposes of the decision of this court, we must accept that the car was moving as above set out. The place where the accident occurred was not at a street intersection, and there was no place provided there for pedestrians to cross. On the contrary, there were automobiles parked along the south side of the street so thick that the parties along with appellee had to squeeze

between them to get across. There was no reason for appellant to anticipate that appellee would be crossing at this place, which was not an intersection, and not a place at which it appeared that pedestrians should cross. As appellant did not see appellee, he owed her no duty to sound his horn. I find no evidence that appellant saw or should have seen appellee a distance of 30 or 40 feet from the place of the accident. On the contrary, the inference is that he did not see her, for he was facing the lights of another machine with his own lights dimmed. I fail to see that appellant was guilty of any act of negligence. We may well remark that he was not a "hit and run" driver. On the contrary, though disclaiming that he was to blame for appellee's injury, he helped to put her in his own car, and took her to the hospital, and did all that he could in the way of first aid.

Now, let us examine appellee's conduct, as disclosed by undisputed evidence, as to whether she was guilty of any negligence that caused her injury. Appellee started from the north side of the street, to cross it. Her grandson, J. W. Branham, was there with her, and she started across ahead of him. He testified that "she was walking at a moderate rate of speed, not hurrying or not dragging along." There was a bridge to the west about 300 feet, and this witness, being asked whether "you could see the bridge from where this happened," answered, "yes, sir." And again being asked "you could see, a clear view, along Thirtieth to the bridge," answered, "yes." Then, he could have seen this automobile approaching, and so could appellee have seen it before she started across the street. As she was walking at a moderate rate of speed, neither hurrying nor dragging, and had traveled about 20 feet, or much less than the full width of the 30-foot street, and, as the line of traffic north of the space occupied by the line of parked cars was north of the

curb, before she came into collision with the automobile, and as it was traveling at a moderate rate of speed of 15 miles per hour, the automobile could not have been more than 160 feet away when she started across, was in plain view, and she could have seen it had she looked. I am assuming that her moderate rate of speed, neither hurrying nor dragging, was two miles per hour, and that, therefore, the car was traveling eight times as fast as she was traveling. The faster she traveled, the closer, of course, the car must have been when she started from the north curb. Her grandson on the north curb saw the car approaching; her granddaughter on the south curb saw it approaching, but she did not until just as it struck her, about two feet away. Why didn't she see it? There is but one answer—she did not look.

The duty to use care rests as well on the pedestrian as on the driver, and I am wholly unable to see, under the undisputed evidence, how appellant can be charged with any act of negligence; while, on the other hand, it clearly appears that appellee took no precaution whatever to protect herself from the approaching automobile. It was her duty, when about to cross the public street, to look and to take precaution to avoid collision with vehicles. *Evans* v. *Adams Express Co.* (1890), 122 Ind. 362, 23 N. E. 1039, 7 L. R. A. 678; *Indianapolis Traction, etc., Co.* v. *Croly* (1911), 54 Ind. App. 566, 96 N. E. 973, 98 N. E. 1091; *Lake Shore, etc., R. Co.* v. *Brown* (1908), 41 Ind. App. 435, 84 N. E. 25; *Stringer* v. *Frost* (1889), 116 Ind. 477, 19 N. E. 331, 2 L. R. A. 614, 9 Am. St. 875; *Simons* v. *Gaynor* (1883), 89 Ind. 165.

In the Evans case, the court, at page 366, stated that: "It is, however, the duty of persons crossing, or about to cross, a public street on foot, to look and take proper precautions so as to avoid collision with approaching horsemen or vehicles." There is certainly much more

need of exercising such care in these perilous times of automobile traffic than there was at the time of the decision in the Evans case, to avoid collision with horse-drawn vehicles.

In the Croly case, the court, at page 575, said: "Placing the case in the most favorable light for the plaintiff, she walked across the street looking straight ahead of her and walked upon the track at a point three or four feet in front of the car that struck her. True, she says that she looked up and down the street and that she saw no car; but the physical facts remain, that the car was there within a few feet of her at the time she stepped upon the track, that is was daylight and that her view was unobstructed. . . . Where it appears that nothing obstructed her view or distracted her attention, we see no excuse for her failure to use such care as she was capable of exercising to observe the approach of the car before stepping upon the track." In the instant case, it was not daylight, but the evidence shows that the street was lighted. The evidence also shows that nothing obstructed appellee's view, and it does not appear that her attention was distracted.

In the Brown case, the court, at page 439, stated: "The law presumes that one having the ordinary sense of sight must have seen that which was within the range of his vision."

If appellee entered a place of danger, as here, and nothing prevented her from discovering her danger, and she failed to do so, she is not entitled to recover, even though appellant did not use proper care to avoid the injury. *Evansville, etc., Traction Co.* v. *Johnson* (1912), 54 Ind. App. 601, 97 N. E. 176; *Indianapolis Traction, etc., Co.* v. *Croly, supra; Pennsylvania Co.* v. *Stegemeier* (1889), 118 Ind. 305, 309, 20 N. E. 843, 10 Am. St. 136.

It is my opinion that the evidence is insufficient to

sustain the verdict, and that the judgment should be reversed.