KING ET AL *v*. RANSBURG.

[No. 16,731. Filed March 4, 1942. Rehearing denied April 15, 1942. Transfer denied May 25, 1942.]

526

528

W. H. *Smith* and *Elza O. Rogers,* both of Lebanon, *George C. Forrey III, White, Wright & Boleman,* and *Fenton, Steers, Beasley & Klee,* all of Indianapolis, for appellants.

*Ben M. Scifres* and *Roscoe Hollingsworth,* both of Lebanon, and *Richard Smith* and *Seth S. Ward,* both of Indianapolis, for appellee.

FLANAGAN, J.—This is an action for damages for personal injuries brought by Ralph Herbert Ransburg, appellee, against Mason King and The Philip Carey Company, appellants, the action growing out of an

accident which occurred when the appellant Mason King was driving his automobile south on Central avenue and approaching 32nd street in Indianapolis, Indiana, and the appellee was walking from east to west across said Central avenue at 32nd street. The complaint alleges that appellant King negligently collided with appellee, and that at the time of the collision appellant King was an agent and servant of appellant The Philip Carey Company, and on an errand of business for said corporation.

Trial by jury resulted in a verdict for appellee against appellants in the sum of $20,000 and judgment was entered on the verdict.

Errors relied upon for reversal are: (1) Overruling appellants' motion to strike out parts of appellee's complaint; (2) overruling appellants' motion to make the complaint more specific; and (3) overruling appellants' separate motions for a new trial.

The grounds of the separate motions for a new trial not waived are: (1) Misconduct of appellee's counsel; (2) insufficiency of the evidence; (3) excessiveness of the verdict; (4) refusal to give appellants' tendered instructions numbered 2, 6, 10, and 11; (5) giving of its own motion the court's instruction numbered 16; and (6) giving appellee's tendered instructions numbered 4, 7, and 16.

The complaint alleges that appellant King operated his automobile "in a negligent, reckless and unlawful manner as follows:

"1. In negligently and recklessly failing to keep a proper and sufficient look-out for this plaintiff.
"2. In negligently failing to give this plaintiff any signal or warning of his approach.
"3. In negligently, recklessly and unlawfully operating said automobile to the left of a trackless

trolley owned and operated by Indianapolis Railways, Inc., while said trolley was stopped at said intersection.

"4. In negligently and recklessly failing to stop said automobile when he saw that a collision with plaintiff was imminent.

"5. In negligently, recklessly and unlawfully operating said automobile at said time and place at the high and dangerous rate of speed of thirty-five (35) to forty (40) miles per hour."

The motion to strike parts of the complaint sought to eliminate the words "unlawful" and "unlawfully" from the above quoted allegations and from other parts of the complaint where they were similarly used.

The complaint alleged among other items of damage that the plaintiff "was forced to lose ____ weeks from his regular vocation." The motion to make more specific sought to have the blank filled in with the number of weeks alleged to have been lost.

Motions to strike out parts of pleadings, and motions to make more specific are usually addressed to the sound discretion of the trial court and that court's rulings on such motions will not be disturbed unless the trial court is shown to have abused its discretion and that the complaining party has been harmed. *Meyer* v. *Garvin, Rec.* (1942), 110 Ind. App. 403, 37 N. E. (2d) 291; *Lindley* v. *Sink* (1940), 218 Ind. 1, 30 N. E. (2d) 456; *Baltimore & Ohio R. Co.* v. *Beach* (1930), 99 Ind. App. 672, 168 N. E. 204; *American Carloading Corp.* v. *Gary Tr. & Sav. Bk., Admr.* (1940), 216 Ind. 649, 25 N. E. (2d) 777.

From an examination of the record we are unable to discover wherein appellants were harmed by the ruling on either the motion to strike or the motion to make more specific and therefore must conclude that the trial court did not in said rulings abuse its discretion.

Appellants charge that the following happenings during trial constituted misconduct on the part of appellee's counsel prejudicial to the rights of appellants:

1. During the examination of the jury on it's *voir dire* appellee's counsel asked a prospective juror whether the questioned juror was connected with any insurance company and if he adjusted claims for insurance companies and whether or not he was connected with or employed by the General Insurance Company. He was further asked if he knew one Fred Smith who was a claim agent for the General Accident Insurance Company. Upon the juror replying that he was not sure appellee's counsel stepped out of the courtroom and returned with Fred Smith and then said, "This is Mr. Smith. I have stated that Mr. Smith is claim agent for General Accident Insurance Company."

2. During the cross-examination of one Harry S. Gillis, witness called by appellants, appellee's counsel asked the witness the question, "Did you see him (referring to appellee) walking down the street with a joggle motion," and before the witness answered, appellee's counsel stepped in front of the jury and walked with a limping and shuffling gait. Further in the same cross-examination the witness was asked by plaintiff's counsel to step down and demonstrate the manner in which he had seen appellee walking.

In explanation of the charged acts of misconduct during the cross-examination of the witness Gillis, it should be related that the witness had testified that appellee was running across the street just prior to the accident; that appellee's counsel was contending that appellee was unable to run because he was crippled as a result of infantile paralysis when he was young, that one leg was shorter than the other and therefore from a distance he lent the appearance of running when

he was in fact walking. The court instructed the jury to disregard counsel's demonstration of walking and did not permit the witness Gillis to make any demonstration.

It is to be remembered that attorneys are officers of the court wherein they are engaged in representing their clients and their conduct is at all times subject to the supervision of that court. The judge of that court sits in the presence of the happenings there. He observes what occurs and its effect upon the jurors. Courts of review do not have such advantage. Isolated scenes tend to take on an importance entirely out of proportion to their place in the whole drama when first seen by a stranger, recorded in the cold print of the review record away from the warm atmosphere of the trial arena. So we have the sound rule that the decision of the trial court on matters of alleged misconduct of counsel will not be disturbed unless it appears that the trial court has abused its discretion and the complaining party has been harmed thereby. *Meeker, Guardian* v. *Decker* (1938), 104 Ind. App. 594, 10 N. E. (2d) 416; *Richmond Insurance Co.* v. *Boetticher* (1938), 105 Ind. App. 558, 12 N. E. (2d) 1005; *Jay* v. *Holman* (1939), 106 Ind. App. 413; 20 N. E. (2d) 656; *Pennsylvania Ice & Coal Co.* v. *Elischer* (1939), 106 Ind. App. 613, 21 N. E. (2d) 436.

In regard to the charges of misconduct during the cross-examination of the witness Gillis, the trial court witnessed the demonstration, instructed the jury to disregard it and was satisfied that any harm which had been done was thereby remedied. We cannot say that the court abused its discretion in refusing to go further and withdraw submission of the cause

from the jury or grant a new trial because of such alleged misconduct.

In the examination of the jury on its *voir dire,* appellee was entitled to inquire of the prospective jurors as to their relationship with insurance companies. *Inland Steel Co.* v. *Gillespie* (1914), 181 Ind. 633, 104 N. E. 76; *Beyer* v. *Safron* (1926), 84 Ind. App. 512, 151 N. E. 620; *Kraning* v. *Bloxon, Admr.* (1937), 103 Ind. App. 660, 5 N. E. (2d) 649, 9 N. E. (2d) 107.

Ordinarily it would not seem proper to inquire as to acquaintance with a certain person, naming him as claim agent for a designated insurance company. However, there are circumstances in the case at bar which must be given consideration. It is contended by appellee that Fred Smith, claim agent for General Accident Insurance Company, had brought some of appellants' witnesses to the place of trial and had been active in and out of the courtroom and at the counsel table in the direction of the litigation, including the examination of the jury on the *voir dire.* The record does not disclose any activity of the claim agent in the courtroom but it does show that he brought some of the witnesses to the place of trial and that he was close at hand during the *voir dire* examination.

While it is perfectly proper for a party to have one of its insurer's claim agents so assist counsel, nevertheless, when one not of counsel and a stranger to the record actively participates in conduct of the litigation in such manner, opposing counsel is justified in discovering from prospective jurors whether they are acquainted with him. The extent of the inquiry must of course be limited by the necessity of the situation so created, but if during a good faith inquiry it incidentally appears that such person is an insurance

company's claim agent we do not see wherein the party that created the situation can complain.

In the instant case the juror being examined was himself in the insurance business and likely to know others similarly engaged. The name Fred Smith was not an uncommon one and the juror would not be able to make the identification from the name alone. Fred Smith was not in the courtroom at the time. We cannot say that identifying him as the claim agent of the General Accident Insurance Company evidenced bad faith on the part of appellee's counsel. When the juror was still not sure of the acquaintanceship after such designation we see nothing wrong with bringing Smith before the jury for the purpose of identification, particularly in view of the fact that Smith made no objection. True it is that restating to the juror that Mr. Smith was claim agent for the General Insurance Company was unnecessary and not to be in any way commended but we cannot say that appellants were so harmed thereby as to require a reversal of the judgment, in view of the fact that the jury already had the information as to his occupation.

Appellants contend that the verdict is not sustained by sufficient evidence: (1) Because there is no evidence to sustain any of the allegations of negligence in the complaint; and (2) because the uncontradicted evidence shows that appellee was guilty of contributory negligence in entering the intersection without looking for oncoming traffic and in walking into the side of the car of appellant King.

Considering, as we must, only that evidence most favorable to appellee we find that it supports the following facts:

On the northeast corner of Central and 32nd street is located a drug store and a grocery store. Otherwise

the district is entirely residential. On the morning of December 17, 1937, at about 8:30 a. m. it was raining very hard as appellee started across Central avenue from the northeast corner of the intersection with 32nd street toward the northwest corner at the place used for pedestrian crossing. He looked both ways for traffic before leaving the curb and again after he had taken a couple of steps into the crossing, and reached a place where he could see without obstruction in each direction, and at neither time saw any traffic approaching. A trackless trolley bus headed south had drawn up to the curb at the northwest corner. Appellant King was driving an automobile approaching the intersection from the north on the west side of Central avenue. When about 250 feet from the intersection he was driving about 45 miles per hour. He gave no signal of his approach. When he reached the rear of the bus and was passing it on its left he first saw appellee and put on his brakes so that he was going about 30 miles an hour when he struck appellee, who had reached about the half-way mark across Central avenue.

We think the above recital discloses ample evidence from which the jury could find that appellant was negligent as charged in the complaint. Nor can we say that it impels the conclusion that appellee was guilty of negligence. While appellant King did testify that appellee ran into the side of his car, there is also ample evidence that appellee was not running but walking and that appellant King ran into him. Even though appellee might have been guilty of negligence, it was for the jury under the circumstances here shown to say whether such negligence was a contributing cause of his injuries. *Pfisterer* v. *Key* (1941), 218 Ind. 521, 33 N. E. (2d) 330; *Fishman* v. *Eads* (1929), 90 Ind. App. 137, 168 N. E. 495.

Appellants complain that the damages assessed by the jury are excessive. Again considering the evidence most favorable to appellee, we find that it supports the following facts relating to damage: .

Appellee at the time of the accident was 39 years of age, married and the father of two children of the ages of 7 and 3. He had gone through Shortridge High School in Indianapolis in three and one-half years, obtained an A.B. degree at Butler University and worked his way through eighteen months at the University of Illinois by doing statistical work for a utility company. He was on the debating team while in high school. After leaving college he worked as salesman in several different stores, including L. S. Ayres & Company of Indianapolis where he was working at the time of the accident, earning $45.00 per week. The personnel director of that store testified that appellant had broken the store's record for selling the most in the men's furnishing department in one day. He was also studying accounting at Indiana University at the time of the accident.

Appellee was struck sufficiently hard to dent the fender of the automobile driven by appellant King, was thrown against the windshield with sufficient force to shatter the glass and was thrown or carried about fifteen feet before he came to rest on the pavement. He suffered a concussion, a skull fracture and a cut across his head which required about 29 stitches. He bled profusely from the mouth, nose and ears and required a blood transfusion. Upon the spinal cord being tapped, blood was found indicating hemorrhage to the base of the brain and spinal cord and to the covering of the brain. He was confined to a hospital for 13 days, and then went to his home. It was about 60 to 90 days after the accident before he was able

to be up and walk around. Five months after the accident he went to work for his brother as a salesman. He worked for four months and then became temporarily of unsound mind as a result of the accident and has been unable to work since. He has developed an impediment in his speech. He has lapses of memory and is unable to carry on a conversation. Medical experts testified that the injuries sustained are permanent and that mental and physical lapses will have a tendency to recur.

In view of the above recited facts, the amount of the verdict does not indicate that the jury was influenced by prejudice, partiality or corruption and we cannot say that it is excessive. See *General American, etc. Corp.* v. *Melville* (1926), 198 Ind. 529, 145 N. E. 890; *Chicago, etc. R. Co.* v. *Stierwalt* (1928), 87 Ind. App. 478, 153 N. E. 807; *Citizens Tel. Co.* v. *Prickett* (1920), 189 Ind. 141, 125 N. E. 193; *Standard Oil Co. of Ind.* v. *Thomas* (1938), 105 Ind. App. 610, 13 N. E. (2d) 336.

Appellants complain of the refusal to give their tendered instruction numbered 6. This instruction in substance says that if appellee came out from behind a parked car and looked only ahead as he crossed the street such facts should be considered in determining whether he was guilty of contributory negligence. The subject of this instruction was fully covered by the court's instruction numbered 9, which informed the jury that if the plaintiff failed to use ordinary care in crossing the street and such failure contributed to the cause of his injury the verdict should be for the defendants. No error was therefore committed in refusing to give appellants' instruction numbered 6.

Appellants' tendered instruction numbered 10 informs

the jury that if plaintiff was guilty of contributory negligence, even though it be slight, he cannot recover. Their instruction numbered 11 informs the jury that negligence cannot be inferred from the happening of the accident, but negligence as alleged must be proved. The court fully and fairly instructed the jury on these subjects and did not err in refusing these particular instructions.

Appellee's instruction numbered 4, objected to by appellants, tells the jury of the various duties of the driver of an automobile when approaching a pedestrian, including the duty to give reasonable and timely warnings. Appellants object on the ground that the instruction omits the point that no such duty to give warning exists if the presence of the pedestrian came to the knowledge of the driver too late for the driver to give effective warning. However, the court gave appellants' instruction numbered 12, which informed the jury that appellants were not liable if appellant King did not and could not see appellee in time to avoid hitting him. When the two instructions are read together, the jury is fully and correctly instructed on the subject.

Appellee's instruction numbered 7 informs the jury generally as to the respective rights and duties of pedestrians and motor vehicles in the use of a street. Appellants find fault with it because it makes no reference to contributory negligence and fails to make exceptions as to certain situations which might exist. The instruction is intended to be a general one and as such correctly states the law. The jury was fully informed in other instructions on the subject of contributory negligence and as to the excepted situations.

Appellee's instruction numbered 16 was on the subject

of damages. Appellants say it is erroneous in that it permits the jury to consider, in assessing damages, charges incurred for nursing care and attention and that there is no allegation in the complaint of any such damage. The complaint in this case alleges that appellee "was forced to become a patient at a hospital." The same language was used in the complaint in the case of *Vockel* v. *Rhynearson* (1936), 101 Ind. App. 637, 197 N. E. 705, and this court held that such language, together with allegations of serious physical injury, was sufficient to inform the defendant that medical attention was required and permitted the proof of bills for physicians' services. We think such language equally gives information of the necessity of nurses' services. Evidence was introduced without objection that a nurse's bill of $58.00 was incurred and paid. This is all the evidence introduced as to any nursing services. In view of the amount of the verdict, we do not believe the jury was misled to appellants' harm by the instruction including nursing charges incurred as an element of damage. The complaint could have been amended in the trial court if necessary to conform to the proof and will be considered so amended here.

Appellant The Philip Carey Company separately claims: (1) That the trial court erred in giving its own instruction numbered 16; and (2) that the evidence fails to show the relationship of master and servant between appellants and fails to show that appellant King was acting within the scope of his employment at the time of the accident.

The court's instruction numbered 16 related to forms of verdict. It gave the jury forms to be used in event it decided for the plaintiff against both defendants and in event it decided for both defendants against the

plaintiff but failed to provide a form in case the jury decided for the plaintiff against one defendant only.

The instruction was correct in so far as it went. Appellant Carey Company presented no instruction on the theory that the relationship between it and appellant King was that of independent contractor instead of master and servant and no instruction on forms of verdict. If appellant Carey Company desired a more complete instruction or one which presented its theory of independent contractor, it should have prepared and presented one. So far as the record discloses, appellant Carey Company never at any time suggested to the trial court that it was advancing the theory that the relationship between it and appellant King was that of independent contractor and not that of master and servant.

On the question of the relationship between appellants, the only evidence submitted was that of appellant King who testified that he was employed by appellant Carey Company at the time of the accident as a salesman for that company's products, which included roofing, asbestos, cement, siding and insulation; that he used his own car and furnished his own gas; that he worked on a commission basis but had a drawing account of $60.00 per week; that the amount drawn was deducted from the amount of his commission at the end of the year; that he was not given stated people to call on at stated times but used his automobile to call on his trade in his own way as to time and route; that his territory was from Meridian street in Indianapolis east to the county line and he was not supposed to sell outside that territory; that the company looked to him for results; that the Carey Company had offices all over the country and he worked at the Indianapolis office with regular hours from approxi-

mately 8:00 a. m. to 5:00 p. m. but that the company did not have tight-bound rules and he had worked to 10:00 or 11:00 at night; that on the day of the accident he had started to work for the company at 8:00 a. m. when he made a telephone call; that he left his home about 8:25 and was within his territory at the time of the accident; that he had no orders from the company to go to the offices that morning but did intend to go there.

Speaking on the question of whether the involved relationship was that of master and servant or independent contractor, in the case of *Park Improvement Co.* v. *Review Board, etc.* (1941), 109 Ind. App. 538, 546, 547, 36 N. E. (2d) 985, this court said:

"Since claimant was an agent receiving remuneration solely upon a commission basis and was master of his own time and effort, the decisive factor is his freedom from control or direction. This freedom from control means freedom from the right to control. *Coppes Bros. & Zook* v. *Pontius* (1921), 76 Ind. App. 298, 131 N. E. 845.

"In the case of *Industrial Commission* v. *Northwestern Mut. Life Ins. Co.* (1939), 103 Colo. 550, 558, 88 P. (2d) 560, it was held that the power to terminate a contract for personal service at any time without liability for it is an important factor in arriving at a conclusion as to whether the individual is free from control and direction ' "because the right immediately to discharge involves the right of control." '

"The appellant in its contract provided that all salesmen should be *in its employ* and that it should have full power to discharge any sales employee who proved unsatisfactory with respect to character, ability, or methods employed in the faithful performance of work allotted to him or her. The authority to discharge the appellee on account of methods employed necessarily implied the right of control over such methods, and consequently the existence of the employment relationship."

"The sales meetings which were held each morning were held to direct the salesmen as to the methods to be used. The appellee testified that he missed several of these meetings and nothing was ever said about it. This is not evidence that appellee was free from control, but only evidence that appellant did not actualy exercise its right of control in this particular.

"Concerning the contention of the appellant that appellee Doell was an independent contractor, it was pointed out, in the case of *Marion Malleable Iron Works* v. *Baldwin* (1924), 82 Ind. App. 206, 145 N. E. 559, by this court that a contractor is one who makes an agreement with another to do a piece of work, retaining in himself control of the means, methods, and manner of producing the result, and without either party having the right to terminate the contract at will."

In Restatement of the Law of Agency, at page 11, the following definitions are given:

"(1) A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.

"(2) A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's control with respect to his physical conduct in the performance of the undertaking."

And again at page 483 of the above work, under subsection 2, we find the following:

"In determining whether one acting for another is a servant or an independent contractor, the

following matters of fact, among others, are considered:

(a)　the extent of control which, by the agreement, the master may exercise over the details of the work;

(b)　whether or not the one employed is engaged in a distinct occupation or business;

(c)　the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d)　the skill required in the particular occupation;

(e)　whether the employer or the workman supplied the instrumentalities, tools, and the place of work for the person doing the work;

(f)　the length of time for which the person is employed;

(g)　the method of payment, whether by the time or by the job;

(h)　whether or not the work is a part of the regular business of the employer; and

(i)　whether or not the parties believe they are creating the relationship of master and servant."　　.　.　.

"The relationship of master and servant is not one capable of exact definition. . . . The factors stated in Sub-section (2) (above quoted) are all considered in determining the question, and it is for the triers of fact to determine whether or not there is a sufficient group of favorable factors to establish the relationship. Where the inference is clear that there is, or is not, a master and servant relationship, it is made by the court; otherwise the jury determines the question after instruction by the court as to the matters of fact to be considered."

Examining the evidence in the instant case, we note that: (1) King was not engaged in a distinct occupation or business; (2) that the work of selling is one usually done under the supervision of the employer; (3) that the Carey Company

furnished the office where King did part of his work or used as his headquarters; (4) that there is no specified time for which King was employed; (5) that the work he did was a part of the regular business of the Carey Company; and (6) that the Carey Company looked to King for results, from which it may be inferred that they could discharge him if such results were not satisfactory.

From the above facts, we think the jury could reasonably find that the Carey Company had the right of control over King, that the relationship of master and servant existed, and that at the time of the accident appellant King was about the business of his employer, appellant Carey Company, and acting within the scope of his employment.

We find no reversible error in the record.

Judgment affirmed.

NOTE.—Reported in 39 N. E. (2d) 822.

ON PETITION FOR REHEARING.

FLANAGAN, J.—Appellants have filed herein their petition for rehearing in which appellant The Philip Carey Company complains that this court in its opinion did not discuss its tendered instruction numbered one. Appellant Carey Company did tender an instruction numbered one which was refused by the court. This instruction was a peremptory one to return a verdict for said appellant. It raised no question other than the sufficiency of the evidence, which question was fully considered and discussed by this court in its original opinion.

No questions are presented by appellants' petition for rehearing which were not fully considered in the orig-

inal opinion. Upon reexamination of the record we find no reversible error.

Petition for rehearing denied.

NOTE.—Reported in 40 N. E. (2d) 999.