## PRINCETON COAL & MINING COMPANY v. ROLL.

[No. 19,980.   Filed February 4, 1903.   Rehearing denied February 4, 1904.]

NEGLIGENCE.—*Complaint.*—In an action for negligent injuries, it is not essential that the complaint to be good upon demurrer should specify with any great degree of particularity the elements entering into the cause of action. *pp. 118, 119.*

MASTER AND SERVANT.—*Personal Injuries.*—*Negligence.*—*Proximate Cause.* —*Miners.*—Where a cager in a coal mine was, in the performance of his duty, upon the cage, loading a car of coal upon the cage to be hoisted, and the engineer, without waiting for a signal, as required by the rules of the company, negligently started his engine and rapidly hoisted the cage into the mouth of the shaft, and against its timbers and sides, thereby injuring the cager, the negligence of the engineer was the proximate cause of the injury. *pp. 119, 120.*

APPEAL AND ERROR.—*General Verdict.*—*Answers to Interrogatories.*—*Conflict.* —The general verdict is conclusive on appeal unless there is a real and substantial conflict in some vital particular between it and the facts found, or some of them, which can not be avoided or explained by any reasonable intendment or inference, and by which the general verdict is necessarily overthrown. *pp. 120, 121.*

EVIDENCE.—*Inferences.*—*Master and Servant.*—*Negligence.*—In an action for personal injury of a cager in a coal mine, caused by the premature hoisting of the cage, it was shown that the engineer was intemperate, careless, and frequently hoisted the cages without being notified by signal so to do. There was no direct proof that the engineer started the engine at the time the cage was hoisted and the plaintiff was injured, but it was shown that the cage was suddenly hoisted without previous signal. The engineer testified that the engine was standing still, and attempted to account for the upward movement of the cage on the theory that it was overbalanced by the empty cage at the top of the shaft suspended by a reverse wire. There was no evidence that anything of this kind ever happened before. *Held,* that the jury was justified in concluding that the engine was carelessly started by the engineer. *pp. 122–124.*

From Gibson Circuit Court; *O. M. Welborn,* Judge.

Action by Robert Roll against the Princeton Coal & Mining Company. From a judgment in favor of plaintiff, defendant appeals. · Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*E. E. Stevenson* and *L. C. Embree,* for appellant.
*Thomas Duncan,* for appellee.

Dowling, J.—The appellee recovered a judgment against the appellant for damages for a personal injury alleged to have been sustained by him, in consequence of the negligence of the appellant, while the appellee was engaged in its service as a cager in appellant's coal mine in this State.

The rulings of the court on demurrers to the several paragraphs of the complaint, on the motion for judgment in favor of the appellant, on the answers of the jury to questions of fact submitted to them, and on the motion for a new trial, are assigned for error.

The complaint originally was in five paragraphs, but on the trial the appellee dismissed his action upon the first and fifth, so that the questions before us on the pleadings are confined to the remaining three. While each of these paragraphs is perhaps open to the charge of uncertainty in its description of the situation at the foot of the shaft when the cage was started upward by the engineer, this infirmity should have been pointed out by a motion to make the pleadings more certain. It is well settled that it could not be reached by a demurrer for want of facts. It is insisted, however, by counsel for appellant that the facts stated do not show that any act of negligence on the part of the appellant, its agents or employes, was the proximate cause of the injury, or that the appellee did not himself contribute to its production.

The substance of the second, third, and fourth paragraphs of the complaint is that the appellant, a domestic corporation, was the owner of a coal mine situated near Princeton, in this State, and engaged in operating the same; that the coal was hoisted from the mine to the surface of the earth by means of movable cages, which were raised and lowered by machinery; that coal from the different parts of the mine was carried along the galleries on

small cars to the cages, and such cars were then run upon the floors of the cages, which, at a given signal, established and posted by the appellant, were hoisted to the top of the shaft, and that empty cars were lowered on similar cages running downward in said shaft; that the appellee was in the employment of the appellant in said mines as a cager of coal, and that his duties consisted in placing the cars loaded with coal on the cage, and taking from the cage the empty cars; that he was compelled to work with great rapidity, a loaded car being hoisted and an empty one lowered every minute; that, in pursuance of the statute, the appellant had posted certain rules and regulations in the engine room, one of which was as follows: "One bell shall signify to hoist coal or empty cage, and also to stop either when in motion. Two bells shall signify that men are coming up. When return signal is given by the engineer, men will get on the cage and ring one bell to hoist. Three bells shall be the engineer's signal for men to get on the cage. Four bells shall signify to hoist slowly, implying danger." That on said day more than ten men were employed by the appellant, and were working in said mine; that the injury to the appellee occurred about seven days after his employment by the appellant; that the appellant, at the time the appellee was employed, and for a long time before that, had in its employment an engineer (naming him) who had charge of the engine used for hoisting the cages containing the loaded cars; that said engineer was habitually careless and negligent in hoisting and lowering such cages; that he disregarded the signals required by law to be given, and the printed rules of the appellant; that he hoisted and lowered said cages and cars at a dangerous rate of speed, at the risk of the lives of the workmen engaged about the same, and that he was otherwise careless, unskilful, and unfit for his position as engineer, of all of which facts the appellant had notice, but that the appellee was ignorant of the same; that, with

knowledge of the negligent and unskilful habits of the said engineer, the appellant retained him in its employment; that on the 10th day of August, 1900, while the appellee was engaged in the performance of his duty, loading a car of coal upon the cage to be hoisted, the said engineer, without waiting for a signal to hoist, negligently started his engine, and rapidly hoisted the cage at and upon which appellee was loading coal, into the mouth of said shaft, and against its timbers and sides, thereby injuring the appellee, without fault on his part, etc. The third and fourth paragraphs of the complaint contain the additional averments that the engineer was intemperate in his habits, frequently became intoxicated, and was thereby unfitted for the proper discharge of his duties, and that this fact was known to the appellant, but was not known to the appellee.

It has been said by this court that in actions for negligent injuries it is not essential that the pleadings, to be good upon demurrer, should specify with any great degree of particularity the elements entering into the cause of action or defense. *Deller* v. *Hofferberth,* 127 Ind. 414; *Mississinewa Mining Co.* v. *Patton,* 129 Ind. 472, 28 Am. St. 203; *Board, etc.,* v. *Huffman,* 134 Ind. 1; *Louisville, etc., R. Co.* v. *Bates,* 146 Ind. 564; *Louisville, etc., R. Co.* v. *Lynch,* 147 Ind. 165, 34 L. R. A. 293.

The object of the rule which requires certainty to a common intent in pleading is to prevent ambiguity or obscurity, and if it be clear enough, according to a reasonable intendment or construction, it is not objectionable. The complaint should show plainly and certainly all circumstances material to the maintenance of the action; for if there be two intendments it shall be taken most strongly against the pleader. Stephen, Pleading, *380; Archibold, Civil Pleading, 108.

It is laid down in Gould, Pleading (4th ed.), Chap. IV, §24, that "the subject-matter of a suit embraces all

the material facts, which constitute the cause of action; and consequently comprehends (according to the nature of the case) the contract declared upon and the breach of it —or the wrong complained of, and its injurious consequences—or the property, of which a recovery is sought, or in respect to which the alleged injury and damage have been done. But the requisite of certainty respects only the manner in which these particulars are to be stated. And in most cases, when the pleader understands what facts are necessary to be stated, there is very little difficulty in alleging them with the requisite certainty; which in general, consists merely in alleging them so distinctly and explicitly as to exclude ambiguity, and make the meaning of the averments clearly intelligible."

The complaint clearly and distinctly states the nature of the employment in which the appellee was engaged, and describes the manner of hoisting and lowering the cages on which it was the duty of the appellee to place loaded cars, and from which he was to remove empty ones. It is averred that at the time of the accident the appellee was engaged in the performance of his duty in loading a car of coal upon the cage to be hoisted, and that the engineer, without waiting for a signal to hoist, negligently started his engine, and rapidly hoisted the cage at and upon which the appellee was loading coal into the mouth of said shaft, and against its timbers and sides, thereby injuring the appellee, and that the appellee was without fault. The averment that, at the time the engine was started, the appellee was upon the cage, in the performance of his duty as a cager, was sufficient to explain his presence there, and to repel any presumption that his conduct in that respect was wrongful or negligent. If, as alleged, the appellee was necessarily upon the cage, and it was suddenly and rapidly hoisted by the engineer, without proper warning, and if the appellee was carried upward by the cage against the mouth and lining of the shaft, and thereby injured,

it would seem sufficiently clear that the wrongful act of the appellant, by its engineer, in starting the engine without giving warning that the cage would be hoisted, was the proximate cause of the injury to the appellee.   Nothing in the complaint indicates that at the time of the accident the appellee was violating any rule or statute, and contributory fault on his part is expressly negatived.   We do not understand the statute and rule set out in the complaint as do counsel for appellant.   The two bells signified that the men wanted to come up, or were ready to come up.   On receiving the return signal from the engineer, the men who were coming up were to get upon the cage and ring one bell to hoist.   The engineer's signal for men to get on the cage was three bells.   But these signals had nothing to do with the movements of the men in the mine in getting on and off the cages in the performance of their work in loading the cars, and putting them in a safe and suitable condition to be hoisted.   At the time the appellee was injured, no signal had been given to the engineer that men were coming up, or that they were on the cage, or to hoist.   But as we have seen, while the appellee was about his work, putting a loaded car on the cage, and perhaps unavoidably stepping upon the cage to push or pull the car into its proper position, without any signal to hoist, or warning bell that he was going to hoist, the engineer started the engine, and suddenly raised the cage from the floor of the mine, carrying the appellee with it, and crushing him against the timbers at the lower end of the shaft.   This statement seems to contain every necessary element of an actionable injury, and to set forth the same distinctly and without ambiguity or obscurity.   The court did not err in holding the second, third, and fourth paragraphs of the complaint sufficient.

Counsel for appellant. next claim that judgment should have been rendered in its favor because it appears from the answers of the jury to some of the questions of fact sub-

mitted to them that the appellee was an experienced cager; that he stepped on the cage just before the accident; that it was his duty to see to it that the cars were so loaded that the levers of the cage would drop into place, and hold the cars on the cage; that the appellant had provided an open and available "traveling way" around the bottom of the shaft as required by the statute; that when the car which the appellee was putting on the cage ran across the cage, the appellee might, but for want of time, have used the traveling way around the shaft, instead of going upon the cage to pull the car back, or that he might have waited for the cager on the other side of the shaft to push it back for him; and, finally, that he would not have received the injuries complained of if he had not gone upon the cage. The facts so stated by the jury are not necessarily inconsistent with the general verdict. It can not be supposed that the jury so regarded them, and the appellant has not shown us, as it was bound to do, that they are wholly irreconcilable with that verdict, which imports, to the exclusion of all inferences and presumptions, that every material averment of the complaint was established by the evidence. On appeal the general verdict is conclusive upon this court, unless there is a real and substantial conflict in some vital particular between it and the facts found, or some of them, which can not be avoided or explained by any reasonable intendment or inference, and by which the general verdict is necessarily overthrown. As we have before said, neither the statute nor any rule of the appellant prohibited the appellee from stepping upon the cage on a temporary emergency, requiring prompt action, while loading a car. The rapidity with which the cars were required to be taken from and placed upon the cage—the rate being one every minute—the dangers incident to the escape of a loaded car from the cage, and the greater facility in stopping it by seizing it before leaving the cage, would seem to afford a full justification of the conduct of the appellee

in going upon the cage for an instant, rather than abandoning the car, and running around the shaft by the traveling way to head it off on the opposite side of the cage, or trusting to the voluntary aid of another miner who had his own duties to perform and his own safety to look after. The traveling way mentioned in the statute was evidently intended for ordinary use by the miners in going past the shaft. It is not to be supposed that in a sudden exigency, such as the escape of a car, the men were expected to take this circuitous route to arrest and return it.

In *Rush* v. *Coal Bluff Mining Co.*, 131 Ind. 135, the miner who had lost his way in the mine, on returning to his place of work, with full knowledge that the shaft was there, undertook to walk directly across it while a cage was being lowered, and was injured. It was with reference to these circumstances that the court said: "The law does not contemplate that employes working in a mine should cross over or under the cage." The language of the court in that case has no application to the facts of the case before us.

But it is further said by counsel for appellant that it was found by the jury that it was the duty of the appellee to see that each car was so loaded that the action of the levers on the cage, intended to catch and hold the car, would not be interfered with or prevented. This may have been so, but in the rapid movement of loaded cars from the track in the mine to the floor of the cage, the coal might easily be shaken down or thrown out of its place, without the knowledge of the appellee, so as to prevent the levers from acting. It is nowhere found that the appellee was negligent in the performance of any duty, and the general verdict excludes the presumption that he was so.

Lastly, counsel insist that a new trial should have been granted the appellant for the reason that there was no evidence to sustain the verdict in certain important particulars, and that the court erred in giving instructions, and in refusing to give others tendered by the appellant.

Counsel for appellant affirm that there was no evidence that the engineer started the engine at the time the cage was hoisted and the appellee injured.   While there was no direct proof of that fact, we can not say that there was no evidence from which the jury had the right to infer it.   The engineer was in the engine room, in charge of the engine.   He was intemperate, careless, and frequently hoisted the cages without being notified by signal to do so. It is hardly to be supposed that, under ordinary circumstances, steam-engines start or stop of themselves.   At the time of the accident to the appellee the cage was suddenly hoisted without previous signal.   The engineer testified that the engine was standing still, and attempted to account for the upward movement of the cage by saying that when the loaded car ran off the floor of the cage, the empty car and cage at the top of the shaft, suspended by a reverse wire cable passing around the same drum to which the lower cage was attached, overbalanced the empty cage at the bottom of the shaft and lifted it up.   The jury, however, were not required to believe the engineer.   His explanation was an improbable one.   If the disparity in the weight of the two empty cages caused the upper one to jerk the lower thirteen feet from the bottom of the mine, it is difficult to understand why this result should not have occurred every time the lighter cage rested on the bottom of the shaft after its empty car had been removed, and before a loaded car had been placed upon its platform. There was no evidence that anything of this kind ever happened before.   But, be this as it may, there was ample ground for the conclusion of the jury that the engine was carelessly started by the engineer, and we can not say that their reasoning from the facts before them was incorrect.

We have already expressed the opinion that the appellee was guilty of no fault or breach of the rules of the mine in stepping upon the platform of the cage to stop the runaway car, and drag it back to its place.   This, it appears,

was the common custom of the miners at that place, and it seems to us that it was the natural and proper thing to do. The traveling way was intended by the statute for an entirely different purpose, and the miner, while handling his car, could not be expected to release his hold upon it, let it escape from him, and then go after it by this circuitous side passageway. Neither was it his duty to make a careful inspection of the loading of the coal on each car, and to assure himself that it was so arranged that it would not interfere with the levers intended to hold the car in its place on the platform of the cage. He was bound to see that the levers were properly fastened, and that the car was secure before he gave the engineer the signal to hoist; and if, from any cause, the levers did not at first catch and hold the car, it was the duty of the cager to pull or push it back upon the cage in the speediest manner practicable, and to fasten it there. There was no lack of evidence to support the verdict, and the court committed no error in overruling the motion for a new trial on the ground of the insufficiency of the proof.

Counsel complain of the refusal of the court to give instructions three, four, five, and six, tendered by the appellant, relating to the use of the traveling way by the appellee, the conduct of the appellee in following his car upon the platform of the cage without signaling that "men were coming up," and the alleged duty of the appellee to arrange the coal on the car, before putting it on the cage, so that the levers would catch and hold it. These instructions were entirely at variance with the views we have expressed, and did not, as we think, correctly state the law. Instruction numbered five given by the court, touching the conduct of the appellee in attempting to pull the car back upon the cage, was more favorable to the appellant than it had a right to demand, and therefore afforded no basis for a motion for a new trial.

Finding no error in the record, the judgment is affirmed.