## NEUWELT ET AL. v. ROUSH

[No. 17,793. Filed April 28, 1949. Rehearing denied June 2, 1949. Transfer denied November 15, 1949.]

482

484

486

*Carl F. Henthorn,* of Covington; *Byron B. Emswiller* and *Albert Stump,* both of Indianapolis, for appellants.

*White & White,* of Covington; *Robison & Robison;* and *Harker & Irwin,* all of Frankfort, for appellee.

WILTROUT, J.—Appellee brought this action against appellants to recover damages for personal injuries sustained when he, a pedestrian, was struck by an automobile driven by the appellant Mathew Neuwelt. Trial by jury resulted in a verdict for $7,000, upon which judgment was entered. The jury also returned answers to interrogatories submitted by appellants.

The assigned errors relate to the overruling of appellants' motions for judgment on the interrogatories, and motion for a new trial.

The facts found by the jury in answer to the interrogatories together with other facts which the jury might find under the evidence disclose the situation following.

Jackson Street is a north and south preferential street in the City of Frankfort. It intersects Barner Street in a residential part of the city. There was no traffic control signal at the intersection.

Around midnight of the night of January 28, 1944, or shortly thereafter, appellee approached the inter-

section from the west, walking on the north side of Barner Street, and started to cross Jackson Street on the crosswalk.

When appellee arrived at the west side of Jackson Street he looked both ways and did not see any cars coming. The last time he looked south was when he was approximately 15½ feet from the west curb, or about two feet west of the center line of Jackson Street. Appellants' car was then approximately 75 feet south of the crosswalk, and there were no objects between appellee and the car to obscure vision.

Appellee remained standing, at least momentarily, at the point two feet west of the center line, and resumed his progress across the street. He thought the car was coming at him, and became confused. His idea was to get out of the way of it.

The street lights at the intersection were lit. The appellant Mathew Neuwelt, who was driving the automobile, testified that he first saw appellee when he was a good block away and was in the street about a step from the curb, and that he thereafter watched appellee's progress across the street. He did not sound his horn. The headlights were burning, and the car was being driven about a foot east of the center line. There were no cars parked along Jackson Street, which was thirty-five feet wide. Appellants' speed was approximately 30 miles per hour as the car entered the intersection and was still approximately 30 miles per hour at the time of the collision. At no time did the car bear to the right. The driver applied the foot brakes, which were in good condition, after it became apparent to him that a collision was imminent, but he testified that this was done probably simultaneously with the impact, or just shortly before. The car went about fifty feet before it stopped.

Only the pleadings, the general verdict, the interrogatories and answers will be considered in determining whether a judgment should have been entered on the answers to interrogatories. The evidence actually introduced at the trial will not be considered, but the court will suppose any evidence that might properly be introduced under the issues. *L. S. Ayres & Company* v. *Hicks* (1942), 220 Ind. 86, 40 N. E. 2d 334, 41 N. E. 2d 195, 41 N. E. 2d 356; *Brown* v. *Greenwood* (1945), 116 Ind. App. 112, 60 N. E. 2d 152; *New York Central R. R. Co.* v. *Thompson* (1939), 215 Ind. 652, 21 N. E. 2d 625.

The general verdict is conclusive unless there is a real and substantial conflict in some vital particular between it and facts found or some of them which cannot be avoided or explained by any reasonable inference and by which the general verdict is necessarily overcome. *New York Central R. R. Co.* v. *Thompson, supra.*

Numerous specific acts of negligence were charged in the complaint. The facts found by the jury in the answers negatived some of these acts. However, there were no interrogatories covering the facts involved as to all of the allegations of negligence. No interrogatories were submitted with reference to whether appellants kept a proper lookout, whether they failed to sound the horn, or as to facts from which it could be definitely said that the speed of the car was not greater than was reasonable and prudent under the conditions and with regard to the actual or potential hazards then existing. The answer to the rate of speed was approximately 30 miles per hour. The speed therefore, may have been more or less than 30 miles per hour. The answer that both headlights were burning does not alone show that the headlights met all requirements of the statute.

*Brown* v. *Greenwood, supra.* Neither did the answer that the brakes on the car were in "good condition" necessarily find that they were adequate for the particular type of vehicle in ordinary reasonable use on the highway. *Rentschler* v. *Hall* (1947), 117 Ind. App. 255, 69 N. E. 2d 619.

The answers to interrogatories must be construed strictly. They cannot be broadened by inference. *N. Y. C. & St. L. R. R. Co.* v. *White* (1934), 99 Ind. App. 454, 192 N. E. 846.

We cannot say, as appellants urge us to do, from the facts found in answer to the interrogatories with reference to appellee's resuming his progress across the street from the point two feet west of the center line after looking at appellants' car 75 feet away, that appellee was guilty of contributory negligence as a matter of law and that such negligence proximately contributed to his injuries. Where the answers to interrogatories fail, as they do here, to find facts necessary to establish the negligence of the plaintiff and that such negligence contributed to the injury, and where evidence was admissible under the issues from which the jury might properly have found that appellee was in the exercise of ordinary care, then a motion for judgment on the interrogatories is properly overruled. *Drewrys Limited U. S. A., Inc.* v. *Crippen* (1943), 113 Ind. App. 120, 44 N. E. 2d 1006.

There was no irreconcilable conflict between the special answers and the general verdict.

Appellants objected to the giving of appellee's instructions 9, 10, and 11 on the ground that they state abstract propositions of law without showing their applicability to the issues, although it is not contended that they are inaccurate. Instruction No. 9 defined contributory negligence. No.

10 was to the effect that the burden of proving that defendant was guilty of negligence rested on the plaintiff, and that the burden of proving that plaintiff was guilty of contributory negligence rested upon the defendant. No. 11 stated that if the jury found from a fair preponderance of the evidence that the plaintiff was guilty of contributory negligence proximately contributing to the injury, their verdict should be for the defendant. It thus appears that the instructions, when read together, were not only applicable to the issues, but were applied to them. It might also be pointed out that the giving of instructions stating mere abstract rules of law is not available error where they correctly state the law with reference to an issue involved. *Grand Rapids, etc. R. Co.* v. *Jaqua* (1917), 66 Ind. App. 113, 115 N. E. 73; *Connor* v. *Jones* (1945), 115 Ind. App. 660, 59 N. E. 2d 577, 60 N. E. 2d 534.

Appellants also complain of the giving of plaintiff's tendered instruction No. 21 on the ground that it assumes as a fact a matter in controversy, and that the instruction does not state the law relative to any issuable facts supported by any evidence. From the objection made to the instruction it appears that it is appellants' position that the assumption complained of was that there was evidence from which the jury could find for appellee under the doctrine of last clear chance, when, as appellants contend, there was no evidence that the appellant driver had knowledge of the situation in time to avoid the accident. The second paragraph of complaint was based upon that doctrine, it being pleaded that appellee was incapacitated, was in a position of peril, and that appellants became aware of that fact in time to avoid the accident. The instruction itself does not assume any fact as having

been proven, and appellants do not contend that it embodies an incorrect statement of the law.

Evidence was introduced by appellants to prove that appellee was incapacitated by reason of intoxication, and there was evidence that appellant driver was able to observe the appellee from a point a block away up until the point of the accident. Nevertheless, the jury specifically found that appellee was not incapacitated, and therefore the verdict does not rest on the last clear chance doctrine. Even if there had been error in this instruction, it was harmless. An erroneous instruction will not be grounds for reversal where answers to interrogatories find the facts to which it is applicable did not exist and it appears that the appellants were not injured by the instruction. *Roush* v. *Roush* (1900), 154 Ind. 562, 55 N. E. 1017; *Baltimore, etc., R. Co.* v. *Harbin* (1903), 160 Ind. 441, 67 N. E. 109; *Grand Rapids, etc., R. Co.* v. *Oliver* (1914), 181 Ind. 145, 103 N. E. 1066.

Appellants also complain of the giving of the appellee's tendered instruction No. 23, asserting that it is erroneous because it allowed the jury to fix any speed it cared to as a negligent speed without regard to any special hazard or special facts or circumstances. The court gave two instructions with reference to speed of motor vehicles. Appellee's tendered instruction No. 22, given to the jury, quoted applicable provisions of the Uniform Act Regulating Traffic on Highways. Acts of 1939, ch. 48, p. 289, § 55; Burns' 1940 Replacement, § 47-2004. The part of appellee's tendered instruction No. 23 which is complained of reads as follows:

"I therefore instruct you that in order to recover on his allegation of negligent speed of the automobile, plaintiff is not required to prove any particular or specific speed when the automobile

entered the intersection, if a preponderance of the evidence shows a speed which you may find to be negligent."

It is true that the above quoted statute provides as to prima facie speed limits that where no special hazard exists the speed of 30 miles per hour shall be lawful in a residence district. But it also provides in Subsection (a) of that section that no person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing; that in every event speed shall be so restricted as may be necessary to avoid colliding with any person on or near a highway in compliance with legal duty and with the duty of all persons to use due care; and that the driver of every vehicle shall, consistent with the requirements of Subsection (a) drive at an appropriate reduced speed when approaching and crossing an intersection and when special hazards exist with respect to pedestrians. § 83 of the same act, § 47-2032, Burns' 1940 Replacement, provides that the driver of a vehicle shall slow down or stop if need be to yield the right of way under conditions which could have been found in the evidence in this case. Read in connection with the other instructions, we find no error in giving this instruction.

Appellants also generally attack the refusal of eighteen of appellants' forty-five tendered instructions for the reason that this left the jury inadequately instructed and that the court refused to give proper instructions on material points not fully covered. No specific application is made as to any of these instructions.

Appellants in their argument concede that it was proper to refuse several of these instructions. A blanket

proposition of this character is too indefinite to meet the particularity required by Rule 2-17 (f) of the Rules of the Supreme Court. *D. Graff and Sons* v. *Williams* (1945), 115 Ind. App. 597, 61 N. E. 2d 72. While a discussion or elaboration of a point is not proper in the statement of points, mere general statements, without specific and definite reasons specifically applied, present no question for review. *Dunlap* v. *State* (1933), 205 Ind. 384, 180 N. E. 475, 186 N. E. 764; *Kimmick's Estate* v. *Dixon* (1931), 93 Ind. App. 8, 177 N. E. 340.

However, a general examination of these instructions reveals that they were either substantially covered by instructions given, were applicable to facts the existence of which were denied by the answers to the interrogatories, or were erroneous.

Appellants attempted to introduce evidence concerning a blood test for alcoholic content without having laid any foundation by showing that blood samples had ever at any time been taken of any person connected with the case. Objections to these questions were properly sustained. After objections had been sustained to seven of such questions, appellee's counsel, in objecting to the eighth, stated that any questions that might be "saved" as to the correctness of the ruling of the court had been repeatedly "saved" by other questions; that the only result of the repeated questions was to prejudice the jury.

Appellants now advance the proposition that by making such statement appellee in effect stipulated that no foundation need be laid and that upon appeal appellee is estopped from questioning the fact that no foundation was laid.

It is stated in 53 Am. Jur., Trials, § 146, p. 131, that:

"It is generally held that when an objection has once been distinctly made and overruled, it need not be repeated to the same class of evidence, since it may be assumed that the court will adhere to the ruling throughout the trial."

It seems clear that counsel was merely referring to this rule of law, and that this statement was not an admission or stipulation, nor can it serve as a basis for an estoppel.

Appellants urge that certain statements by appellee in giving his version as to his actions immediately before the collision cannot reasonably be believed, and must be disregarded. These statements were that he didn't think he even moved before the car hit him; that he started to take a step but that it didn't seem to him that he took a step; that he remembered he tried to take a step and didn't get it done.

It is well settled in this state that testimony of a witness which is opposed to the laws of nature, or is in conflict with principles established by the laws of science, is of no probative value and a jury is not permitted to rest its verdict thereon. In our opinion the statements of appellee do not come within this rule. The weight to be given to appellee's version was for the jury. *Connor* v. *Jones, supra,* and cases there cited.

Appellants assert that under the uncontradicted evidence no act of negligence charged in the complaint was committed by appellants; that appellee's conduct constituted contributory negligence as a matter of law and was the sole proximate cause of the accident.

By their general verdict for the appellee these issues were necessarily decided against the appellants, and the verdict of the jury will not be disturbed if there is any competent evidence or legitimate inferences to be drawn therefrom to sustain it.

In passing upon the sufficiency of evidence to support the verdict, the answers of the jury to the interrogatories will be accepted as establishing the facts therein found unless they are wholly unsupported by the evidence. This court will consider such facts in connection with the record bearing on other material facts in determining whether the verdict is supported by the evidence. *Sourbier* v. *Brown* (1919), 188 Ind. 554, 123 N. E. 802; *Standard Oil Co.* v. *Allen, Admr.* (1920), 189 Ind. 398, 126 N. E. 674; *Cleveland, etc., R. Co.* v. *Baker* (1921), 190 Ind. 633, 128 N. E. 836; *Baltimore, etc., R. Co.* v. *Mangus* (1920), 74 Ind. App. 373, 126 N. E. 863.

Section 83 (a) of the Uniform Act Regulating Traffic on Highways; § 47-2032 (a), Burns' 1940 Replacement, provides that when traffic control signals are not in place, the driver of a vehicle shall yield the right of way, slowing down or stopping if need be, so as to yield to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway within a crosswalk upon which the vehicle is traveling or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger. This statute imposes an absolute duty upon the driver to yield the right of way to a pedestrian under the circumstances and with the exceptions detailed therein, and a failure so to do constitutes negligence *per se*. *Fields* v. *Hahn* (1945), 115 Ind. App. 365, 57 N. E. 2d 955; *Rentschler* v. *Hall, supra*. The right of way given to the pedestrian, however, means the privilege of the immediate use of the highway and is not an absolute right which he may exercise without using reasonable care. *Cochran* v. *Wimmer* (1948), 118 Ind. App. 684, 81 N. E. 2d 790. The jury, under the evidence here, could have

found that the appellee had the right of way at this intersection, and that appellants did not yield.

In this case the appellant Mathew Neuwelt testified he saw the appellee enter the crosswalk when the car was a block away from the intersection. This knowledge imposed upon appellants the duty to determine if appellee was upon or closely approaching the half of the highway they were using and, if necessary to ascertain that fact, to slacken their admitted speed, and place the car under such control that the driver could see a pedestrian rightfully crossing and could avoid striking him after he did see him. *Fields* v. *Hahn, supra; Croatian Bros. Pkg. Co.* v. *Rice* (1928), 88 Ind. App. 126, 147 N. E. 288.

Were appellants negligent in not sounding the horn? Duties in respect to sounding the horn are covered in three sections of statute. Acts of 1925, ch. 213, p. 570, § 36; Burns' 1940 Replacement, § 47-513,

> "In approaching a pedestrian who is walking or standing upon the traveled part of any highway, and not upon a sidewalk, and upon approaching an intersecting highway or curve or a corner in a highway where the operator's view is obstructed, every person driving or operating a motor vehicle or motor-bicycle shall slow down and give a timely signal with the bell, horn or other device for signaling."

This section of the statute has not been superseded. *Connor* v. *Jones, supra.*

The courts generally recognize that the operator of a motor vehicle upon a public highway or street should anticipate the presence of a pedestrian lawfully using the highway and keep a proper outlook, and have his automobile under control

in order to avoid a collision with another person using proper care, and under the statute cited it is the duty of the motorist to slow down and give timely warning of his approach. *Am. Carloading Corp.* v. *Gary Tr. & Sav. Bk., Admr.* (1940), 216 Ind. 649, 25 N. E. 2d 777; *Vockel* v. *Rhynearson* (1936), 101 Ind. App. 637, 197 N. E. 705. Acts of 1939, ch. 48, p. 289, § 85; Burns' 1940 Replacement, § 47-2034, provides:

> "Notwithstanding the foregoing provisions of this act, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon a roadway and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway."

Acts of 1939, ch. 48, p. 289, § 147 (a); Burns' 1940 Replacement, § 47-2229 (a), provides, in part:

> ". . . The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon the highway."

In this case the appellee saw appellants' car before the accident. It has been intimated by this court that whether under the applicable statutes the driver of a car should have sounded his horn is not material where the pedestrian saw the approaching car, on the ground that giving a signal is to warn of the approach of the automobile, and if the pedestrian knew of the approach such warning was unnecessary. *Detwiler, Admx.* v. *Culver Military Academy* (1930), 91 Ind. App. 355, 168 N. E. 246. But in *Pfisterer* v. *Key* (1941), 218 Ind. 521, 528, 33 N. E. 2d 330, our Supreme Court said:

> "The warning is for the purpose of giving the pedestrian an opportunity to protect himself. See

*Croatian Bros. Packing Co.* v. *Rice* (1928), 88 Ind.
App. 126, 147 N. E. 288. We think it also might
be construed as a notice to the pedestrian that the
driver intends to use that part of the highway
on which the pedestrian is walking. The duty to
slow down is enjoined upon drivers of auto-
mobiles, perhaps to the end that the driver may
change the course of his automobile in time to
avoid a collision, if the pedestrian does not heed
the warning."

The jury could have found under the evidence that
appellee's position in the street was such that appel-
lants should reasonably have anticipated that he might
move into its path, and should have notified appellee
of their intention to proceed.

The appellant driver was the only witness who testi-
fied that he did keep a lookout. When a material fact
is supported only by the uncorroborated testi-
mony of a single witness, there is no reason
why the jury should not subject the credibility
of such witness to proper tests, even though his testi-
mony is not contradicted by that of any other wit-
ness. The jury had the right to take into consideration
all of the other evidence in the case, including physical
facts, circumstances and surroundings, that might in
any way affect the weight of credibility of such evi-
dence. *McKee* v. *Mutual Life Ins. Co. of New York*
(1943), 222 Ind. 10, 51 N. E. 2d 474. Thus the jury,
in deciding whether appellants kept a lookout, could
consider the fact that the car did not turn to the
right, although the right half of the pavement was
seventeen and one-half feet wide and there were no
parked cars, but continued its course near the center
line, as well as the speed of the car, its failure to slow-
down, sound the horn, or yield the right of way. It
is well settled that a fact may sometimes be estab-
lished by circumstantial evidence more firmly than by

direct evidence, which is conflicting therewith. *H. E. McGonigal, Inc.* v. *Etherington.* (1948), 118 Ind. App. 622, 79 N. E. 2d 777.

Regardless of the part of the street in which the pedestrian may be, if the driver sees, or in the exercise of reasonable care could see, the pedestrian in time to avoid a collision with him, and does not do so, he may be liable for resulting injuries. *Fishman* v. *Eads* (1929), 90 Ind. App. 137, 168 N. E. 495.

There being ample evidence to support a finding that appellants were guilty of some of the acts of negligence alleged, it is immaterial whether there is evidence tending to prove other acts of negligence, and it is unnecessary to discuss them further.

Section 83 (a) of the Uniform Act, *supra,* also provides that no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.

Appellants contend that when appellee was at the point two feet west of the center line of the pavement he was in a place of safety and all he had to do was to stand still and not be hit. The appellant .Mathew Neuwelt testified that appellee suddenly stepped forward into the path of the car. But the burden of proving contributory negligence was upon the appellants, and even if appellee might have been guilty of negligence it was for the jury under the circumstances to say whether such negligence was a contributory cause of his injuries. *Fishman* v. *Eads, supra; King* v. *Ransburg* (1942), 111 Ind. App. 523, 39 N. E. 2d 822, 40 N. E. 2d 999; *Connor* v. *Jones, supra.*

In *Cole Motor Car Co.* v. *Ludorff* (1916), 61 Ind. App. 119, 125, 111 N. E. 447, this court said:

"Likewise had she looked and mistaken the distance or misjudged the speed of the approaching automobile, it would still be a question of fact for the jury to determine from all the facts and circumstances shown by the evidence whether in attempting to cross, and while in the act of crossing, she exercised ordinary care for her own safety."

Contributory negligence becomes a question of law only when the evidence most favorable to the plaintiff and all proper inferences therefrom are such that reasonable minds will agree that the injury complained of was the proximate result of the plaintiff's own negligence. *D. Graff and Sons* v. *Williams* (1945), 115 Ind. App. 597, 61 N. E. 2d 72. Where the facts are in conflict, or of such a character that reasonable minds may draw different inferences from them, then the question is one of fact to be determined by the jury. *Gatewood et al.* v. *Lynch* (1939), 107 Ind. App. 168, 23 N. E. 2d 289; *Associated Truck Lines, Inc.* v. *Velthouse* (1949), 227 Ind. 139, 84 N. E. 2d 54; *Northwestern Transit, Inc.* v. *Wagner* (1945), 223 Ind. 447, 61 N. E. 2d 591.

The case of *Red Cab, Inc.* v. *White* (1938), 213 Ind. 269, 12 N. E. 2d 356, presented a factual situation similar in several respects to this case. There the appellee was walking west across the street, sixty feet wide. A double street car track occupied the street, the west rail of the west track being seventeen feet from the west curb. Appellee passed over the street car tracks and looked both ways for approaching cars, and seeing none proceeded to cross the street. When three or four feet west of the west rail, without

any warning she was run down by appellant's taxicab which was traveling south on the east side of the west half of the street. The court said:

"Can this court say, as a matter of law, that there was no evidence of negligence upon the part of the appellant? Considering the evidence most favorable to appellee, it will be seen that the taxi was traveling at a speed of twenty to twenty-five miles per hour in a closely built-up section of the city at a time and place when the traffic was 'fairly heavy'; that the taxi was being operated on the east half of the west half of Illinois Street at nine o'clock in the evening with the street well lighted; that if the taxi had been traveling on the west side of the street it would not have struck appellee. Whether the taxi was being operated in the manner provided by statute, whether the operation was in a negligent and careless manner, and whether the driver was free from negligence are questions of fact to be determined by the jury.

"Upon the question of appellee's contributory negligence, the evidence discloses that she was crossing the street at an intersection, and under the ordinance of the city in force at that time, she was given the right of way over the taxi. This was a question for the jury and not a question for the court to determine.

"There is some evidence from which the jury might reasonably conclude that the appellant was guilty of negligence in the operation of the taxi, and that there was no evidence of contributory negligence upon the part of the appellee. In other words, more than one inference may be drawn from the facts. Therefore the question of negligence is one of fact for the jury to determine."

See also *Vogel* v. *Ridens* (1942), 112 Ind. App. 493, 44 N. E. 2d 238.

The verdict was sustained by sufficient evidence, and was not contrary to law.

Judgment affirmed.

## DISSENTING OPINION

DRAPER, J.—I am unable to agree with the result reached by the majority.

To my mind the evidence in this case, as revealed by the transcript, shows without conflict that the appellant was driving in a careful and prudent manner and the appellee was wholly at fault. I think no right-of-way question is involved. The appellee saw the automobile approaching when it was some distance away. He stopped and stood in a place of absolute safety, apparently for the purpose of letting it pass. It stands undenied in this record that he was injured solely because he suddenly, unexpectedly and unaccountably lunged or staggered directly into the path of the automobile when it had approached so closely on its own side of the road that no prudent person could have stopped or otherwise avoided him. It was utterly impossible for the appellant to keep the appellee from injuring himself, and it would have been utterly impossible for any other prudent driver to do so.

Nor could the jury apparently discover any negligent conduct on the part of the appellant. By its answers to interrogatories the jury in effect said the appellee was injured because he was "confused." No doubt he was. There was much evidence to indicate a high degree of "confusion." But if so, his state of "confusion" was not chargeable to the defendant, for he did nothing to cause it.

I believe the evidence and inferences therefrom most favorable to the appellee wholly fail to furnish any rational basis for the verdict returned, and the verdict is, therefore, not sustained by the evidence.

The law does not impose upon the driver of an automobile the obligations of an insurer, and the jury should not be permitted to do so. This court may not

interfere when there is some evidence to support a verdict. It should not hesitate to do so when there is none.

I would reverse the judgment.

Crumpacker, C. J., concurs in this opinion.

NOTE.—Reported in 85 N. E. 2d 506.